UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-60661

DAMERA ELSABET GIRMAY,

       Plaintiff,

v.

M/Y EALU, a 1995 model 132-foot
Northcoast motor yacht, MMSI No. 376093000,
her engines, tackle, dinghies, and appurtenances,
in rem, and EALU MI LLC,
as employer of DAMERA ELSABET GIRMAY
and owner of the M/Y EALU, in personam,

       Defendant.

_____/

### ORDER DENYING MOTION TO VACATE ARREST; APPROVING REPORT OF MAGISTRATE JUDGE; OVERRULING OBJECTIONS

THIS CAUSE is before the Court upon Defendant EALU MI, LLC's Expedited Motion for Show Cause Hearing as to Why Arrest Should Not be Vacated and to Vacate Arrest (the "Motion") [DE 18] filed herein on April 28, 2025, and the Report of Magistrate Judge Patrick M. Hunt dated June 6, 2025. [DE 42]. The Court has conducted a *de novo* review of the Motion, the Report, Defendant EALU MI, LLC'S Objections to Magistrate Judge Hunt's June 6, 2025 Report and Recommendation [DE 42]. The Court has also reviewed the supplemental briefings from both Parties submitted on July 2, 2025, and is otherwise fully advised in the premises. The Court notes that Judge Hunt held a hearing on the Motion on May 9, 2025. *See* [DE 25]. Upon careful consideration, the Court agrees with the Magistrate Judge's conclusions as set forth in the Report, but also upon its own reasoning below.

## I.   BACKGROUND

Plaintiff's Complaint alleges she was sexually assaulted while employed as a seafarer in the capacity of a second stewardess aboard the M/Y EALU upon navigable waters. *See generally* [DE 1]. Plaintiff therefore brings *this in rem* and *in personum* action against both the M/Y EALU, a 1995 model 132-foot Northcoast motor yacht ("Vessel") and against the owner and employer of Vessel, EALU MI, LLC. She asserts five counts: Count I *in rem* claim against M/Y EALU for unseaworthiness; Count II *in rem* claim against M/Y EALU for Maintenance and Cure; Count III: *in personum* claim against EALU MI, LLC for Jones Act Negligence, 46 U.S.C. § 30104; Count IV: *in personum* claim against EALU MI, LLC for unseaworthiness; Count V: *in personum* claim against EALU MI, LLC for failure to provide maintenance and cure.

Shortly after filing her Complaint, Plaintiff moved for an issuance of a warrant *in rem* to arrest the Vessel. [DE 3]. This Court required Plaintiff to post a bond of $10,000 before the motion for issuance of a warrant *in rem* would be granted. [DE 4]. Plaintiff did so [DE 9-10] and the Court thereafter granted Plaintiff's Motion to arrest the Vessel and directed the clerk to issue a warrant of arrest for the Vessel. [DE 12].

By its instant Motion, Defendant moves for relief in several forms. First, Defendant asks for a prompt post arrest hearing. That hearing occurred. *See* [DE 25]. Second, Defendant asks the Court to enjoin the Plaintiff from moving the Vessel to Miami. Judge Hunt as adjudicated that aspect of the Motion in [DE 32]. Third, Defendant asks that the Court vacate the arrest of the Vessel. Defendant's only argument on this point is that this Court lacked subject matter jurisdiction to arrest the Vessel in the first instance.[1]

---

[1] Defendant's original Motion does not argue the Court lacked probable cause to seize the Vessel based upon the underlying allegations. *See generally* [DE 18]. Judge Hunt concluded after a hearing that the Parties agreed probable cause existed. He found that the only argued ground for vacatur of the arrest

Defendant first argued (before Magistrate Judge Hunt and in its Objections to the Report and Recommendations) that this Court lacked jurisdiction because the jurisdictional factors under the Jones Act were not met. Without deciding which test applied, this Court required supplemental briefing on the issue of whether the incident met the "location and connection test" traditionally required to exercise admiralty jurisdiction over maritime torts. Defendant now argues in its supplemental briefing that this Court also lacks jurisdiction to seize the Vessel pursuant to the "location and connection test." Plaintiff argues to the contrary.

## II.    DISCUSSION

The Court will first decide which jurisdictional test applies. Next, the Court will apply the test to the facts here. Ultimately Court concludes it has admiralty jurisdiction over this action.

### A.  Which Jurisdictional Test Applies

Plaintiff brings this action *in rem* to enforce a maritime lien that arose from the instance of sexual assault. *See* [DE 1] ¶ 26 ("This is a seafarer's in rem action to enforce a lien for damages arising from the unseaworthiness of the Vessel."); ¶ 32 ("This is an in rem action to enforce a seafarer's preferred maritime lien for maintenance and cure."). The Eleventh Circuit explained that general maritime tort law gives a tort victim a "maritime lien" against a vessel within the meaning of Supplemental Rule C:

---

was jurisdictional. *See* [DE 42] at p. 18. In its Objections, Defendant asserts (in a footnote) it did not concede this point. Defendant states, contrary to Judge Hunt's finding, "Claimant / Owner made no such agreement and only conceded that if the Plaintiff had in fact been a U.S. Citizen assaulted in U.S. waters, then there would have been probable cause for the arrest." [DE 44] at p. 5 n. 1. This appears closer to a jurisdictional argument, rather than an argument that the underlying alleged facts were improbable. Accordingly, the Court deems the question of probable cause waived. Even absent the waiver, the record reflects there was probable cause to seize the Vessel. Consequently, the Court only addresses the jurisdictional challenges.

> A vessel is "an entity apart from its owner" that "is liable ... for torts," *Merchants Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1345 (5th Cir. Unit A Dec. 1981), and a maritime tort gives the victim a lien against the vessel "by operation of the general maritime law," Schoenbaum, *supra*, at § 9-1. This "lien is created as soon as the claim comes into being," and the "principle [of an automatic lien] ... [is] equally applicable to all claims ... which can be enforced in admiralty against the ship, whether arising out of tort or of contract." *The John G. Stevens*, 170 U.S. 113, 117, 18 S.Ct. 544, 42 L.Ed. 969 (1898);
>
>     . . .
>
> "Federal district courts obtain *in rem* jurisdiction over a vessel when a maritime lien attaches to it," *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010).

*Minott v. M/Y BRUNELLO*, 891 F.3d 1277, 1285 (11th Cir. 2018); *see also Craddock v. M/Y The Golden Rule*, 110 F. Supp. 3d 1267, 1273 (S.D. Fla. 2015). Where other pleading requirements are met, this Court "must" issue a warrant of arrest for a vessel to enforce a maritime lien. Supplemental Rule C ("An action in rem may be brought: To enforce any maritime lien.. . . If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action.").

Conversely, the Jones Act gives rise only to an action *in personum* against the shipowner and does not permit a Plaintiff to seek seizure of a vessel. *See Zouras v. Menelaus Shipping Co.*, 336 F.2d 209, 210 (1st Cir. 1964) ("the Jones Act does not create a maritime lien but gives rise only to an action in personam against the shipowner, wherefore the Act could not be enforced in admiralty by suit in rem.") (citing *Plamals v. Pinar Del Rio,* 277 U.S. 151 (1928)); *see also Bd. of Comm'rs of Orleans Levee Dist. v. M/V BELLE OF ORLEANS*, 535 F.3d 1299, 1309 (11th Cir. 2008), abrogated by *Lozman v. City of Riviera Beach*, Fla., 568 U.S. 115 (2013)(distinguishing an action under the Jones Act from an action "giving rise to a maritime lien").

Accordingly, the Court's authority to seize the vessel—and therefore, to vacate the arrest of the vessel—arises from its authority to enforce a maritime lien, not pursuant to the Jones Act.

We therefore examine whether this Court has jurisdiction to enforce the maritime lien by ordering the seizure of the vessel. This is a question of whether the Court has admiralty jurisdiction. *Minott v. Brunello*, 891 F. 3d 1277, 1280 (11th Cir. 2018) ("[plaintiff's] claim for a maritime tort against the [vessel] falls within the admiralty jurisdiction of the district court, id. § 1333(1), and [plaintiff] is entitled to a warrant in rem, Fed. R. Civ. P. Supp. R. C(3)(a)(i)); *Craddock v. M/Y The Golden Rule*, 110 F. Supp. 3d 1267, 1273 (S.D. Fla. 2015) ("[e]nforcement of a maritime lien [] can be maintained only within the district court's admiralty jurisdiction.") (citing *E.S. Binnings, Inc. v. M/V Saudi Riyadh,* 815 F.2d 660, 662 (11th Cir.1987) (cleaned up).

Therefore, the Court will apply the test for determining admiralty jurisdiction arising from a maritime tort giving rise to a lien, *see, supra*, which is the location and connection test.

### B. *Whether Admiralty Jurisdiction Existed to Seize the Vessel Under the Location and Connection Test*

"A party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995)) (emphasis added). We examine whether the facts of this case pass muster under the location and connection test. We conclude that it does.

i.   Location

"A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995) (internal quotations and citations omitted). "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 254 (1972) (quoting *The Plymouth*, 70 U.S. 20, 36

5

(1866)). "The law is entirely well settled . . . that torts originating within the waters of a foreign power may be the subject of a suit in a domestic court." *Panama R. Co. v. Napier Shipping Co.*, 166 U.S. 280, 285 (1897). "A tort need not have occurred in waters under the jurisdiction of the United States for us to exercise admiralty jurisdiction." *Malaysia Int'l Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 355 (3d Cir. 2006), *rev'd on other grounds*, 549 U.S. 422 (2007); *see also Campbell v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 07-61744-CIV, 2008 WL 4609986, at *3 (S.D. Fla. Oct. 14, 2008) ("the majority of courts that have addressed the issue" have determined federal admiralty jurisdiction extends to torts occurring in the territorial waters of other nations) (collecting cases).

While there is language in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205 (1971) suggesting otherwise, most lower courts have declined to adopt this language as a substantive limitation on a federal court's admiralty jurisdiction under § 1333. *See, e.g.*, *Perforaciones Exploracion y Produccion v. Maritimas Mexicanas*, S.A., 356 F. App'x 675, 678 (5th Cir. 2009) ("the statement in Victory Carriers appearing to limit jurisdiction to the navigable waters of the United States is dicta.").

In this case, the Court agrees with Judge Hunt's conclusion that the location prong is satisfied. The incident took place while aboard Vessel as it sailed through the navigable waters in the Caribbean islands, namely in the English Harbor of Antigua in the West Indies.[2] Courts in this Circuit have exercised jurisdiction over incidents occurring on navigable waters in the Caribbean. *See, e.g.*, *Doe v. Celebrity Cruises, Inc.*, 394 F. 3d 891, 900-901 (11th Cir. 2004) (exercising

---

[2] In this factual attack on jurisdiction, the Court may consider facts outside the four corners of the Complaint. Defendant provides a declaration of Maurice Byrne, sole manager of EALU MI, LLC, which is the owner of the M/Y EALU, and Plaintiff's employer. The Affidavit states, "At the time of the alleged incident, December 28, 2024, the Vessel was located in English Harbor, Antigua, West Indies." This statement is not contested, and the Court accepts this as true for the purpose of this motion.

6

admiralty jurisdiction over a sexual assault that occurred in the port of call in Bermuda); *Campbell v. Starwood Hotels & Resorts Worldwide, Inc*., No. 07-61744-CIV, 2008 WL 4609986, at *5 (S.D. Fla. Oct. 14, 2008) (finding the location prong satisfied where the tort occurred in the Bahamas).

Defendant argues this case "involves a foreign seafarer, hired aboard a foreign owned and foreign flagged vessel, who was allegedly assaulted in foreign waters by a foreign crewmember" and that therefore this Court lacks jurisdiction. But none of these factors are material when determining admiralty jurisdiction—only whether the incident occurred upon the navigable waters. *See Broughton v. Fla. Int'l Underwriters, Inc.,* 139 F.3d 861, 865 (11th Cir. 1998) ("To satisfy the location test, the tort must have occurred on navigable water or the injury suffered on land must have been caused by a vessel on navigable water") (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995)). The Court is therefore satisfied that the "location" prong is met. At the same time, because Plaintiff has not argued that the claims cannot be pursued in courts in the West Indies, "there is the possibility of dismissal of these claims under forum non conveniens or foreign comity concerns." *Miralda v. Tidewater, Inc.*, No. CIV.A. 11-1170, 2012 WL 208780, at *4 (E.D. La. Jan. 24, 2012).

    ii.    Connection

When applying the connection test, the "court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity" *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995).

The Eleventh Circuit has determined that "admiralty jurisdiction obviously exists where a crew member sexually batters a passenger while the two are onboard the ship." *See Doe v.*

*Celebrity Cruises, Inc.*, 394 F. 3d 891, 900 (11th Cir. 2004). While the Eleventh Circuit commented that its decision rested on the "outer boundary" of admiralty jurisdiction, that comment referred to its holding that admiralty jurisdiction extended to torts occurring at *a port of call*. *Id.* at 901. The Eleventh Circuit did not mince its words regarding whether *sexual assault* falls within the type of tort that generates admiralty jurisdiction. It concluded, "a crew member's sexual assault on a passenger obviously 'has a potentially disruptive impact on maritime commerce.' It is easy to imagine that if rape or other forms of sexual battery became a concern of passengers, cruise-ship business would necessarily suffer." *Id.* at 900. Therefore, this Court is satisfied that the connection test is satisfied under the facts here, where Plaintiff alleges sexual battery.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion [DE 18] is **DENIED**;

2. Judge Hunt's Report and Recommendation [DE 42] is **APPROVED** as to the recommendation;

3. Defendant's Objections [DE 44] are **OVERRULED**;

4. Defendant shall file an answer to the Complaint by July 22, 2025.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of July, 2025.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record

Magistrate Judge Hunt

8