UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN ADMIRALTY

Case No.: 0:25-cv-60661

DAMERA ELSABET GIRMAY,

       Plaintiff,

v.

M/Y EALU, a 1995 model 132 foot Northcoast motor yacht, MMSI No. 376093000, her engines, tackle, dinghies, and appurtenances, *in rem*, and EALU MI LLC, as employer of DAMERA ELSABET GIRMAY and owner of the M/Y EALU, *in personam*,

       Defendants.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR**
***FORUM NON CONVENIENS***

Plaintiff Damera Girmay, a U.S. citizen seafarer, was attacked in her bed and sexually assaulted while working aboard the M/Y EALU — a vessel that has been lawfully arrested in this District since April 22, 2025. Defendants seek dismissal under *forum non conveniens*, falsely claiming the Vessel has no connection to the United States. However, the named assured under the Vessel's insurance policy is EALU LLC, based in Plano, Texas. The broker who procured the insurance policy for the Vessel is based in Fort Lauderdale, Florida, USA. The mortgagee is based in Tallahassee, Florida, and the debtor listed on the State of Florida UCC Financing Statement is EALU MI LLC at the same Plano, Texas address listed in the insurance policy. This Vessel is owned and operated by a company with a U.S. base of operations hiding behind a registered agent in the Marshall Islands and a flag of convenience. Under controlling maritime law, this Court should retain jurisdiction and deny dismissal.

## I.   LEGAL STANDARD

"A defendant has the burden of persuasion as to all elements of a *forum non conveniens* motion[.]" *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001).

The plaintiff's forum choice "should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The Eleventh Circuit has cautioned that "[t]he doctrine should not be invoked `lightly ... because it effectively deprives the plaintiff of his favored forum[.]'" *Fresh Results, LLC v. ASF Holland, B.V.,* 921 F.3d 1043, 1048 (11th Cir. 2019). Deference is especially strong where the plaintiff is a U.S. citizen. Maritime *in rem* arrest actions are rarely dismissed under this doctrine.

As such, "a defendant bears the burden of justifying dismissal based on *forum non conveniens*." *Id.* (citing *La Seguridad v. Transytur Line,* 707 F.2d 1304, 1309 (11th Cir. 1983)). To satisfy this burden, the defendant must establish that: (1) an adequate alternative forum is available;

(2) private interest factors favor the foreign forum; (3) public interest factors favor dismissal; and (4) the plaintiff can reinstate the suit in the alternative forum without undue inconvenience or prejudice. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).

## II. ARGUMENT

### A. Defendant has not Met its Burden of Demonstrating that Antigua is an Adequate and Available Alternative Forum

A defendant has the burden of persuasion as to all elements of a *forum non conviens* motion, including the burden of demonstrating that an adequate alternative forum is available. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 951 (11th Cir. 1997). Availability and adequacy warrant separate consideration. *See Satz v. McDonnell Douglas Corp.,* 244 F.3d 1279, 1283-84 (11th Cir. 2001).

An alternative forum is "available" to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred. *See Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252 (citation omitted) ("Ordinarily, [the requirement of an alternative forum] will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."). In this case, the Defendants have not shown whether Antiguan courts can assert jurisdiction over Plaintiff's *in rem* claims— against the Vessel itself.

A defendant also bears the burden of proving the "adequacy" of the alternative forum. *See Satz,* 244 F.3d at 1282 (defendant carried burden of proving Argentina was an adequate forum). In *Piper,* the Supreme Court has noted that dismissal may be improper where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." 454 U.S. at 254, 102 S.Ct. 252. Courts have been strict about requiring that defendants demonstrate that the alternative forum offers at least some relief. *See, e.g., Mercier v. Sheraton*

*Int'l, Inc.,* 935 F.2d 419, 425 (1st Cir.1991) (reversing *forum non conveniens* dismissal required where defendant failed to prove "expressly that Turkish law recognizes claims for breach of contract and tortious interference with contract").

Defendants have failed to demonstrate that Antigua is an available and adequate forum within the meaning of the *forum non conveniens* doctrine. They have submitted no affidavit from Antiguan counsel addressing whether Plaintiff could bring her claims there or obtain any comparable relief. There is no indication that Antigua provides a comparable civil remedy to seafarers for sexual assault under maritime law. They cite no Antiguan legal authority establishing that Plaintiff could enforce her maritime lien, assert claims for unseaworthiness, maintenance and cure, or seek damages equivalent to those available under U.S. maritime law. Nor do they show that a U.S. seafarer with no connection to Antigua could access its courts or afford to litigate there. They do not explain how any Antiguan procedure would accommodate *in rem* proceedings or provide an equivalent to the vessel arrest already obtained in this Court.

B. Libertad 54, No. 11-cv-23201, Is Not Controlling

Defendants rely solely on *In re Libertad 54*, but that case is not binding and is readily distinguishable.

First, it involved foreign plaintiffs and a wrongful death, not a U.S. seafarer asserting *in rem* rights. Second, the decision was made without written analysis. The Court's reasoning was delivered orally, and the order itself does not state the legal grounds. Third, there is no indication that the Libertad court evaluated whether Antigua provides remedies equivalent to those required under the Jones Act, maintenance and cure doctrine, or the General Maritime Law of the United States.

This case is fundamentally different. Plaintiff is a U.S. citizen. She asserts statutory and lien-based rights that are not available in Antigua, and the Vessel is currently under arrest in this District.

C.   <u>Private Interest Factors Weigh Against Dismissal</u>

Private interests include the parties' relative ease of access to sources of proof, access to witnesses, ability to compel testimony, the possibility of viewing the premises, and the enforceability of a judgment. *See Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839.

***Plaintiff is a U.S. Citizen – entitled to strong deference in her forum choice.***

"With respect to the private interests, courts begin with the presumption that a domestic plaintiff has chosen a sufficiently convenient forum, and it is therefore incumbent upon the defendant "to prove vexation and oppressiveness that are out of all proportion to the plaintiff's convenience.""" *Otto Candies, LLC v. Citigroup, Inc.,* 963 F.3d 1331, 1338-39 (11th Cir. 2020) (citing *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1314 (11th Cir. 2001) (internal quotation marks and citation omitted)).

"The defendant must offer 'positive evidence of unusually extreme circumstances,' and the district court must be 'thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" *Id.* (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica,* 382 F.3d 1097, 1101 (11th Cir. 2004)) (quoting *Burt v. Isthmus Dev. Co.,* 218 F.2d 353, 357 (5th Cir. 1955)).

Foreign plaintiffs are also entitled to a presumption in favor of their forum choice, albeit a presumption that "applies with less force." *Sinochem Int'l,* 549 U.S. at 430, 127 S.Ct. 1184 (quoting *Piper Aircraft,* 454 U.S. at 255-56, 102 S.Ct. 252). Reduced deference is "not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since

dismissal for *forum non conveniens* is the exception rather than the rule." *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 45-46 (3d Cir. 1988) (citation omitted). *Accord R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 168 (2d Cir. 1991).

Defendants have not even alleged, much less proven, vexation and oppressiveness that are "out of all proportion" to the Plaintiff's chosen venue. Furthermore, once we peel back the layers of EALU's foreign shell company and flag of convenience, it is evident that the Vessel has a U.S. base of operations. EALU "MI" LLC is the Marshall Islands shell corporation of EALU LLC—a Delaware corporation with a place of business in Plano, Texas. The Marshall Islands address is nothing more than a registered agent address used by all foreign-based Marshall Islands companies. *See* Marshall Islands Entity Search, **Exhibit 1**.

Maurice Byrne, who executed all the declarations in this case as the sole managing member of EALU "MI" LLC is also the sole managing member of EALU LLC. The documents he filed with the Texas Secretary of State contain Mr. Byrne's affirmation under oath that he resides in Texas—not in Canada. *See* EALU LLC Application, Exhibit 2.

The Vessel's insurance policy was filed as an exhibit in a declaratory judgment action currently pending in this District, Case No. 25-cv-61304-AHS. *See* **Exhibit 3**. It shows the Vessel's named insured is a Texas-based company, EALU, LLC. Defendant EALU "MI" LLC is listed as an additional assured and will have to appear as a Defendant in that matter in this District as well. The broker who procured the insurance policy is Brown & Brown Marine in Fort Lauderdale, Florida. Recently, on July 31, 2025, the mortgagee, Sea Dreams Marine LDC, based in Tallahassee, Florida, appeared in this case. The Verified statement of interest is accompanied by the UCC Financing Statement Form filed with the state of Florida and executed by Maurice Byrne for EALU "MI" LLC, with an address in Plano, Texas.   (ECF No. 74-1). EALU "MI" LLC conducts

substantial activities in the United States, not in the Marshall Islands. The Vessel's base of operations is Fort Lauderdale. Therefore, it appears it would be more convenient for EALU MI LLC to litigate in the Southern District of Florida than in Antigua. *See, e.g.*, 14D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, Federal Practice and Procedure § 3828 (4th ed. 2013) ("In some instances, controversies that at first blush appear to be foreign actually have a meaningful connection with the United States or its domestic policies because there have been relevant transnational contacts.")

This is yet another reason to leave the presumption for the Plaintiff's chosen forum in place and require that the Defendant demonstrate—with positive evidence—why litigating on its home turf would be so oppressive and vexatious that a federal court should decline jurisdiction. When an American plaintiff sues an American defendant for conduct allegedly occurring in the United States, it should not be easy for the defendant to obtain a *forum non conveniens* dismissal. *See, e.g., Galustian v. Peter,* 591 F.3d 724, 732 (4th Cir. 2010) (providing greater deference in favor of a domestic forum where "the defendant is a resident and citizen of the forum he seeks to have declared inconvenient for litigation"); *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir. 1996) (in weighing the *Gulf Oil* factors, "the court starts with a presumption in favor of the plaintiff's choice of forum, especially if the defendant resides in the chosen forum, as here").

In its *forum non conveniens* motion, the Defendant argued that "a majority (if not all) of the evidence and key witnesses are located outside of the United States. Key fact witnesses involved in the subject incident are located all over the world (e.g., crew, alleged assailant, human resources, vessel owner) and are non-U.S. Citizens." [ECF No. 67].

But Defendants did not identify any of the "key fact witnesses" by name or position, attest to their residence in Antigua with affidavits, anticipate the basic topics of their testimony, or

explain how these unidentified witnesses would be critical to their case. In reality, the witnesses are all relatively available. The Plaintiff's assaulter was in the jurisdiction for weeks following the Vessel arrest. *See* Hatami Declaration attached as Exhibit 4. The Defendants were already able to procure sworn declarations from Heather Charters (HR) [ECF No. 60-1], Lisa Sergard (stewardess) [ECF No. 70-1], Nick Riley (Captain) [ECF No. 60-2], and Maurice Byrne (sole manager of the LLC that owns the Vessel) [ECF 67-1] with relative ease.

Defendants also asserted that "a majority (if not all) of the evidence and key witnesses are located outside of the United States." However, they did not identify this evidence or key witnesses, generally or specifically. Defendants also speculated—without details or evidence— that " Key fact witnesses involved in the subject incident are located all over the world." All of these private interests weigh against dismissal.

D.  <u>Public Interest Factors Favor Retaining the Case</u>

Public interests include a sovereign's interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law. *See Gulf Oil*, 330 U.S. at 508-09, 67 S.Ct. 839. This Court has already exercised jurisdiction over the Vessel and expended judicial resources. Florida has a strong interest in regulating maritime torts connected to vessels arrested in its waters, especially those insured and mortgaged through Florida-based companies. The Vessel is insured through Florida brokers and mortgaged to a lender in Tallahassee. Florida has a legitimate public interest in ensuring that vessels financed and serviced through its commercial infrastructure are not shielded from liability by foreign registrations.

Defendants suggest that Florida has no legitimate interest in the matter, but this case involves the sexual assault of a U.S. citizen seafarer in the course of her employment on a yacht based out of Fortt Lauderdale. The United States has a longstanding interest in regulating the

conditions of maritime employment and protecting crewmembers from violence aboard vessels, particularly in the context of luxury yachts operating commercially in the U.S., carrying U.S. passengers, and relying on U.S. systems.

Given these factors, and the substantial proceedings already conducted in this Court, the public interest weighs strongly in favor of retaining jurisdiction.

E.   Plaintiff Would Be Prejudiced by Dismissal

Dismissal would severely prejudice Plaintiff by depriving her of the ability to enforce her maritime lien and pursue in rem claims against the vessel. There is no assurance that Antigua would recognize or provide a comparable remedy, nor any evidence that Plaintiff could obtain adequate or timely relief in that forum. Transferring the case would reward Defendants for structuring their operations through paper jurisdictions while relying on U.S. financial, insurance, charter, and employment infrastructure. The equities strongly favor retaining jurisdiction to ensure that Plaintiff's rights under U.S. maritime law are not extinguished.

F.   Lauritzen–Rhoditis Factors Strongly Support U.S. Law

Courts determine whether maritime claims are governed by the law of the United States (the Jones Act and general maritime law), rather than the conflicting law of a foreign nation, utilizing the factors outlined by the Supreme Court's decisions in *Lauritzen v. Larsen* 345 U.S. 571 (1953)*; Romero v. International Terminal Operating Co.,* 358 U.S. 354 (1959); and *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306 (1970).

I.   **Choice of law analysis**

EALU glosses over the fact that the Plaintiff, DAMERA ELSABET GIRMAY, is a citizen of the United States.  She was sexually assaulted by a male crewmember while she was employed as a seafarer on a yacht upon navigable waters. If there is any doubt that application of American

law in this case is reasonable, "plaintiff's American citizenship would eliminate them." *Neely v. Club Med Mgmt. Services, Inc.*, 63 F.3d 166, 197 (3d Cir. 1995). Here, the Plaintiff's U.S. citizenship "demonstrates that the United States has more than enough interest in this incident for American law to apply." *Id.*

      **a. The *Lauritzen* Factors**

The "Lauritzen-Rhoditis factors" are:

      (1) the place of the wrongful act;

      (2) the law of the flag;

      (3) the allegiance or domicile of the injured worker;

      (4) the allegiance of the defendant shipowner;

      (5) the place of the contract;

      (6) the inaccessibility of the foreign forum;

      (7) the law of the forum; and

      (8) the shipowner's base of operations.

*See Rhoditis*, 398 U.S. at 309; *Solano v. Gulf King 55*, 212 F.3d 902, 905 (5th Cir. 2000). "In determining whether the application of American law is reasonable, the court conducts a *Lauritzen* analysis. The individual factors of the *Lauritzen* test are not requirements, and once the plaintiff has established prescriptive jurisdiction, it is incumbent upon the defendant to prove foreign contacts." *Salvemini v. Air & Liquid Sys. Corp.*, No. 1:22-CV-00977-MN-SRE, 2025 WL 437283, at *9 (D. Del. Feb. 7, 2025).

### i.  Summary of Lauritzen–Rhoditis Factors

| Factor | Weight | Explanation |
|---|---|---|
| Place of the Wrong | Neutral | The assault occurred aboard the vessel while it was in Antiguan waters. Although the location is foreign, it is incidental and not dispositive under maritime choice-of-law analysis. |
| Law of the Flag | Minimal weight | The flag is inconsistent — Defendants have identified both St. Vincent and the Bahamas in their filings. This inconsistency, combined with other U.S. contacts, shows the flag is a convenience. |
| Seafarer's Allegiance or Domicile | Strongly U.S. | Plaintiff is a U.S. citizen and resident. This weighs heavily in favor of applying U.S. law and retaining the U.S. forum. |
| Shipowner's Allegiance | U.S. | Though registered in the Marshall Islands, the vessel is insured through Florida brokers, financed by a Texas mortgage, and managed by individuals using U.S. infrastructure. |
| Place of the Contract | Foreign | The employment contract was signed in Antigua, but this is outweighed by the vessel's U.S.-based operations and Plaintiff's U.S. citizenship. |
| Accessibility of Forum | U.S. | Antigua lacks equivalent remedies. Defendant has failed to show Plaintiff can obtain punitive damages, maintenance and cure, or enforce a maritime lien there. |
| Law of the Forum | U.S. | Plaintiff filed in a U.S. court under admiralty jurisdiction. The vessel is arrested in Florida. |
| Base of Operations (Rhoditis) | U.S. | The vessel's financial, insurance, charter, and management operations are based in the United States, not the Marshall Islands or Antigua. |

11

### ii.  the place of the wrongful act

"The test of location of the wrongful act or omission ... is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." *Lauritzen*, 345 U.S. at 583. The location of the injury is likely fortuitous when the seafarer is exposed to the same risks throughout the course of the journey. Here, Girmay's sexual assault took place upon navigable waters in an Antiguan port, and her exposure to the dangerous crewmember she was forced to share her cabin with took place wherever the yacht travelled, in the United States, as well as in international waters. Thus, this factor should be accorded little weight.

### iii.  the law of the flag

The M/Y Ealu is flagged in St. Vincent & the Grenadines, but the Defendants assert in the Motion that the Vessel is flagged in the Bahamas. Either way, they do not explain how application of Vincentian or Bahamian law would differ from the laws of the United States. "In order for the law of the flag appreciably to diminish the reasonableness of applying American law, the defendant would have ... to demonstrate both what the law of the flag was and that it conflicts in some respect with American law ...." *Neely*, 63 F.3d at 193.

Where, as here, "the foreign incorporation of the defendant and the foreign registration of the vessel were a facade designed to disguise American beneficial ownership, operation and control and to avoid the consequences of American shipping laws, the law of the flag will be disregarded as a mere flag of convenience." *Banegas v. United Brands Co.*, 663 F.Supp. 198, 204 (D.S.C. 1986).

The law of the flag is less significant where there is a "flag of convenience." It is basically insignificant when the court does not know what that law is, or where there is no conflict between American law and the law of the flag." *Neely*, 63 F.3d at 194–95.

As the Supreme Court observed over 50 years ago, "flag of convenience fleets have regularly grown at rates more than twice those of world fleets as a whole."  *Am. Radio Ass'n v. Mobile S.S. Ass'n, Inc.*, 419 U.S. 215, 232 (1974).  "It is common knowledge that in recent years a practice has grown, **particularly among American shipowners, to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries**." *Lauritzen*, 345 U.S. at 587 (emphasis added). "Confronted with such operations, our courts on occasion have **pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places upon them**." *Id.*

This Court should similarly "press beyond the formalities" of M/Y Ealu's foreign flag of convenience in St. Vincent & the Grenadines and apply U.S. law to this case. "[T]he law of a flag of convenience state is not entitled to the same conclusive effect as that of a 'legitimate' flag state and cannot be used to oust otherwise applicable law." *Banegas*, 663 F.Supp. at 204; *Pandazopoulos v. Universal Cruise Line, Inc.*, 365 F.Supp. 208, 214 (S.D.N.Y. 1973).

St. Vincent & the Grenadines is obviously a flag of convenience—which is not the same country as the Vessel owner's base of operations. In addition, the registration of yachts under the flag of St. Vincent & the Grenadines is managed from offices located in Fort Lauderdale, Luxembourg, and Montenegro. http://www.svg-marad.com/home.asp

M/Y Ealu's "foreign" flag is a facade to try to avoid U.S. maritime law. The law of St. Vincent & the Grenadines should be disregarded as a mere flag of convenience. Accordingly, this factor should have no particular significance in deciding whether it is reasonable to apply U.S. law.

### iv.   the allegiance or domicile of the injured worker

Plaintff is a United States citizen. The United States has an overriding interest in assuring adequate compensation for its injured seafarers. *Neely*, 63 F.3d at 171. This factor weighs heavily in favor of the application of American law.

An injured seaman's connection to the United States is one of the most important of the *Lauritzen* factors tending to show the reasonableness of applying American law. *Neely*, 63 F.3d at 195. Indeed, Congress enacted the Jones Act out of heightened concern for American seamen in the wake of the Titanic disaster in 1912. *See* Peter Beer, *Keeping Up with the Jones Act*, 61 Tul. L. Rev. 379, 384 (1986) ("[I]n the wake of public reaction to that tragedy, Congress began to face what it perceived to be its duty to the American seaman.").

This discussion has prompted many commentators to assert that the Jones Act applies to all American seamen regardless of all other circumstances of the case. *See, e.g.,* Law of Admiralty § 6–63, at 475–76 ("American law will be applied in any personal injury or death case in which the action is brought by (or on behalf of) a citizen (or, in all probability, a long-term or permanent resident) of the United States.... American law applies to American citizens as well as to American 'domiciliaries' whether they serve on American-flag or foreign-flag ships and no matter where they may be injured.... [T]here is no doubt that American harbor workers, repairmen and the like are also entitled to the application of American law."); *Lewis E. Lamb III,* Cruz v. Chesapeake Shipping, Inc.: *Statutory Construction or Nonstatutory Choice of Laws—What Is the Proper Juristic Standard When International Political Objectives and Federal Law Intersect?,* 17 N.C. J. Int'l L. & Com. Reg. 339, 369 (1992).

Nevertheless, while the Supreme Court has made clear that the Jones Act protects foreign as well as American seamen, the fact remains that American seamen were the subject of Congress's

particular concern. *See Neely*, 63 F.3d at 196. When evaluating the *Lauritzen* factors, "courts should consider claims brought by American seamen as manifesting by definition much of the necessary substantiality of connection." *Id.*

### v.   the allegiance of the defendant shipowner

EALU "MI" LLC is a Marshall Islands company, yet the ties to the Marshall Islands exist only on paper. EALU "MI" LLC is a shell corporation, and the real Vessel owner/employer is EALU LLC—a limited liability company organized under the laws of Delaware, with a principal place of business in Plano, Texas.

EALU "MI" LLC's **registered agent**'s address is Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, The Marshall Islands MH 96960, but it had no offices or employees there. *See* **Exhibit 1**. Non-resident corporations can be formed online, and corporate officers, directors, and shareholders may be of any nationality and live anywhere. https://2009-2017.state.gov/j/inl/rls/nrcrpt/2015/supplemental/239255.htm   Hundreds   of   non-resident companies registered in the Marshall Islands, like EALU MI LLC, list the identical Trust Company Complex address as their registered address in the Marshall Islands although they have no place of business there. That address pertains to The Trust Company of the Marshall Islands, Inc., which is the Republic of Marshall Islands' Maritime Administrator. *See Int'l Yacht Bureau, Inc. v. Int'l Registries, Inc.*, No. 13-60947-CIV, 2014 WL 815292, at *1 (S.D. Fla. Mar. 3, 2014).

In turn, the Trust Company of the Marshall Islands's parent company is International Registries, Inc., https://www.register-iri.com/corporate/, a U.S. corporation headquartered in Reston, Virginia.   https://www.fincen.gov/sites/default/files/advisory/advis20.pdf.   Therefore, peeling back the layers, EALU "MI" LLC is essentially a U.S. company.

"Courts have had no difficulty disregarding papier mache formalities of nominal foreign registration to enforce against American shipowners or operating companies the obligations created by American law." *Tsakonites v. Transpacific Carriers Corp.*, 246 F.Supp. 634, 637 (S.D.N.Y. 1965). Thus, the Jones Act was applied in *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437 (2d Cir. 1958), where American citizens were the shareholders of a Panamanian corporation which in turn held the stock of defendant shipowner, a Liberian corporation; in *Carroll v. United States*, 133 F.2d 690 (2d Cir. 1943), where the vessel was owned by the United States whose agent operated it under a Panamanian flag; and in *Gerradin v. United Fruit Co.*, 60 F.2d 927 (2d Cir. 1932), where the vessel, owned by a New York company, was operated by a New Jersey corporation under a Honduran flag.

"While each case must be decided on its own facts, these cases teach that beneficial ownership and control of the vessel by American citizens or corporations will be given legal significance despite schemes, however complex or imaginative, to avoid American laws through the formalities of foreign registration and operation." *Tsakonites*, 246 F. Supp. at 637.

Maurice Byrne, is the sole manager of EALU MI, LLC, who is the owner of the M/Y EALU and was at all material times GIRMAY's employer. *See* Byrne Declaration, (ECF No. 18-1 ¶ 2). Maurice Byrne is also the governing person of EALU LLC, a Delaware limited liability company registered to do business in Texas. *See* EALU LLC's Application for Registration of a Foreign Limited Liability Company, filed in the Office of the Secretary of State of Texas, signed by Maurice Byrne (**Exhibit 2**) and stating that Mr. Byrne's address is in Plano, Texas. *See also* Delaware Department of State Division of Corporations entity details for EALU LLC, attached as **Exhibit 5**. EALU LLC operates in the United States, with its principal place of business in Plano, Texas, and has a Federal Tax ID number.

This analysis does not amount to piercing the corporate veil. See *Salvemini*, 2025 WL 437283, at *10. "We are examining the substance of the connections for the purpose of determining the reasonableness of applying American law under the circumstances." *Id.*

EALU MI LLC has no real "allegiance" to the Marshall Islands. There are no offices or employees in the Marshall Islands. The sole member of the LLC, Maurice Byrne, claims to be a citizen of Canada and Ireland who resides in Canada. Declaration, ECF No. 67-1, ¶ 1. Yet, in his application for registration of his LLC with the Secretary of State of Texas, Maurice Byrne represented his address was 2500 N. Dalas Pkwy, Ste. 180 Plano Texas, and he signed that application with the state of Texas subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument. *See* **Exhibit 2**.

EALU "MI" LLC was created solely to hold title to the Vessel as a contrivance to side step U.S. laws, including the Jones Act, payment of maintenance and cure and unseaworthiness claims and to prevent U.S. citizens such as Girmay from suing the Defendant in United States courts, and to deprive her of seafarers' remedies under the statutory and general maritime law of the United States, which is violative of federal statutes, the general maritime law, and the public policies of the United States.

This factor weighs in favor of applying American law.

### vi.  the place of the contract

In *Lauritzen*, the Supreme Court discounted the importance of the place of contract and reasoned that "[a] seaman takes his employment, like his fun, where he finds it; a ship takes on crew in any port where it needs them." *Neely*, 63 F.3d at 192 (quoting *Lauritzen*, 345 U.S. at 588).

Girmay's claims at issue sound in tort, rather than contract, so the place of contract is generally not a "substantial influence in the choice between competing laws. *Lauritzen*, 588-89;

*see also Romero,* 358 U.S. at 383 ("the place of contracting is largely fortuitous and of little importance in determining the applicable law in an action of marine tort").

In this case, this factor should carry no significant weight in the choice of law analysis.

### vii.   the inaccessibility of the foreign forum

There is no indication that Antigua provides a comparable civil remedy to seafarers for sexual assault under maritime law, nor any mechanism for enforcing *in rem* liens or granting Jones Act-style recovery to a seafarer for the employer's negligence, the Vessel's unseaworthiness, or the employer's failure to provide maintenance and cure. Under the Antigua and Barbuda Legal Profession Act of 2008, an attorney-at-law shall not charge a contingency fee except with the prior agreement of the client for reasonable commissions on the collection of liquidated claims. Therefore, the forum is constructively inaccessible to the Plaintiff because her claims are unliquidated, and she cannot afford to pay an attorney expensive hourly fees to prosecute her case.

### viii.   the law of the forum

The Defendants vaguely address the law of the flag state (ECF No. 67), yet they claim that it is the law of the Bahamas, even though it was previously stated to be St. Vincent & the Grenadines. *See* ECF No. 18.

Pursuant to *Lauritzen* and *Rhoditis*, this factor supports application of American law. Based on the actual facts of this case, whatever the interests of St. Vincent and Grenadines (or the Bahamas) may be, neither the Defendant nor the Court can conclude that these interests are so threatened or so strong that America's interests must be ignored.

### ix.   the shipowner's base of operations.

The Vessel's base of operations is in the United States (Delaware, Texas, Florida). Thus, U.S. law applies to this seafarer's maritime claim.

The factual, legal, equitable, and contractual circumstances of this case weigh in favor of invoking U.S. law. The "facade" of EALU's operation must be considered as minor, compared with "the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States." *Rhoditis*, 398 U.S. at 310 (applying U.S. law to a foreign seaman's dispute, due to the shipowner's substantial and continuing contacts with this country, and disregarding the ship's foreign flag and the foreign choice of law clause). Otherwise, an alien owner with substantial business operations in the United States might escape his obligations as a Jones Act "employer" and unfairly disadvantage citizens of this country engaged in the same business. *Rhoditis*, 398 U.S. at 309.

1. The M/Y Ealu website, https://ealu.com/ advertises that it cruises in and around U.S. ports, touting it as a "private superyacht offering world-class service and cruising St. Barth's, BVI, Bahamas, New England and everywhere in between," with rates from $99,600/week. Ealu's telephone number to obtain information about chartering the boat is a 954 area code, designating Broward County, Florida.

2. On https://www.boatsatsea.com/charter-yacht-ealu the M/Y Ealu advertises its "Summer Port" as Fort Lauderdale, FL.



3. M/Y Ealu's cruising area—based out of the home port of Fort Lauderdale, FL—includes New England, the southeastern United States, the northeastern United States, and specifically names Annapolis, Maryland. *See also* logbook evidence ECF No. 33, pp. 3-5.



4. On April 30, 2025, Defense counsel represented that the Vessel intended to have engine maintenance work done in Fort Lauderdale for a few weeks and then travel and remain in the northeast through October. *See also* Insurance Policy (**Exhibit 3**).

5. CharterWorld LLP lists the M/Y Ealu as one of its Luxury Motor Yachts Over 100ft/30m For Charter in Fort Lauderdale.   https://www.charterworld.com/index.html?sub=yacht-results&location=Fort-Lauderdale-458&type=6&location_filter=458&page=2



6.  DMA Yachting, https://mybvicharter.com/ , with offices in Miami and/or Florida, Greece, and Spain, advertises M/Y Ealu for charter, with a "home port" of Fort Lauderdale, Florida. https://mybvicharter.com/yacht/crewed-yacht/ealu-132-ft-northcoast/#features

When analyzed under Lauritzen–Rhoditis, the relevant factors overwhelmingly favor the application of U.S. maritime law. The Plaintiff is a U.S. citizen, the vessel's commercial base is in the United States, and the use of a flag-of-convenience scheme should not be permitted to frustrate access to U.S. remedies.

G.  This Is a Flag of Convenience Structure

Defendant relies on Marshall Islands incorporation and inconsistent flag claims while insuring and operating through U.S.-based entities. This is a textbook flag of convenience scheme. Under Rhoditis, the Court must disregard this façade and assess the vessel's real-world operational base, which is clearly U.S.-centered. A cold, objective look at the operational contacts of the vessel and its owner confirms this is a U.S.-centered enterprise cloaked in foreign formalities. Accordingly, the Court should decline to dismiss this action under forum non conveniens and apply U.S. law.

## III.  THE COURT SHOULD DENY THE MOTION TO DISMISS AND RETAIN JURISDICTION OVER THIS CASE

The Court has jurisdiction and compelling grounds to retain this case. Defendant's forum non conveniens arguments are directly contradicted by the record. Plaintiff is a U.S. citizen asserting maritime claims in a U.S. court. The vessel is currently under arrest in Florida. It is insured and operated through a Texas-based company using Florida brokers, marinas, and service providers. Given these substantial U.S. contacts, this Court should deny Defendants' motion and allow the case to proceed on the merits.

Respectfully submitted,

/s/  Adria G. Notari              and
ADRIA G. NOTARI                  J. RYAN MELOGY
Fla. Bar No. 87272               N.Y. Attorney Registration No. 4831152
E-mail: anotari@NotariLaw.com    *pro hac admission forthcoming*
NOTARI  LAW, P.A.                E-mail: maritimelegalsolutions@pm.me
1820 SW 14th Court               Maritime Legal Solutions, PLLC
Fort Lauderdale, FL 33312        276 Fifth Ave. Suite 704-1454
Telephone: (954) 257-9028        New York, NY 10001
Facsimile: (954) 231-1128        Telephone: (347) 562-9119
*Attorneys for Plaintiff*, Damera Elsabet Girmay

## CERTIFICATE OF SERVICE

I certify that on August 5, 2025 the foregoing document was electronically filed with the

Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this

day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/  Adria G. Notari
Adria G. Notari

## Service List

Adria G. Notari                          Adam B. Cooke
Fla. Bar No. 87272                       Fla. Bar No. 634182
E-mail: anotari@NotariLaw.com            Email: acooke@fowler-white.com
Notari  Law, P.A.                        John Michael Pennekamp
1820 SW 14th Court                       Fla. Bar No. 983454
Fort Lauderdale, FL 33312                Email: jmp@fowler-white.com
Telephone: (954) 257-9028                Fowler White Burnett, P.A.
Facsimile: (954) 231-1128                Citigroup Center
*Attorney for Plaintiff*, Damera Elsabet Girmay    201 South Biscayne Boulevard, 20th Floor
                                         Miami, Florida 33131
                                         Telephone: (305) 789-9200
                                         Facsimile: (305) 789-9201
                                         *Attorney for Owner/Claimant of M/Y Ealu*

                                         Richard J. McAlpin
                                         Fla. Bar No.: 438420
                                         rmcalpin@mfm-maritime.com
                                         McALPIN FLOREZ MARCOTTE, P.A.

80 Southwest 8th Street, Suite 2805
Miami, Florida 33130
Telephone: 305-810-5400
Facsimile: 305-810-5401
*Attorney for Defendants*